**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT W. COLLETTE,**

                    **Plaintiff,**

  vs.                                            **7:15-cv-00956
(MAD)**

**COMMISSIONER OF SOCIAL SECURITY**

                      **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**CONBOY, MCKAY, BACHMAN &**       **LAWRENCE D. HASSELER, ESQ.**
**KENDALL, LLP**
407 Sherman Street
Watertown, New York 13601
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **DAVID L. BROWN, SPECIAL AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Robert W. Collette, ("Plaintiff") commenced this action on August 5, 2015, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is July 21, 1980, which made him thirty-one years old on October 27, 2011, the alleged onset of his disability. *See* Dkt. No. 9, Administrative Transcript ("T."), at 128. Plaintiff completed high school in 1999, and he also completed vocational schooling in criminal justice. *See id.* at 152. Plaintiff is seeking a closed period of disability from October 27, 2011 through April 9, 2013. *See id.* at 28, 49. During this period of time, Plaintiff took care of his personal hygiene without assistance, remembered to take his medications, prepared his own meals, laundered his clothes, and cleaned his residence. *See id.* at 161-62. He was a licenced driver and drove to his disability hearing. *See id.* at 30, 162-63. Plaintiff was able to complete his shopping in stores. *See id.* at 163. During this period of alleged disability, Plaintiff was not able to enjoy his hobbies of playing sports, but he continued to be social on a weekly basis. *See id.* at 164. Plaintiff does not suffer from any mental health conditions. *See id.* at 34.

Also during this time, Plaintiff experienced a little pain when he lifted objects, but he did not have any limitations in standing, walking, sitting, climbing stairs, kneeling, squatting, using his hands, seeing, hearing, or talking. *See id.* at 165. He also does not have any problems paying attention, remembering things, completing tasks, or getting along with people in authority. *See id.* at 166-67. Plaintiff was watching his infant daughter during this period of alleged disability. *See id.* at 169.

Plaintiff's past relevant work includes part-time work as a dishwasher and a gardener in 1999 through 2002. *See id.* at 152. He then worked as a full-time laborer for manufacturing companies intermittently from 1998 through 2009. *See id.* at 33, 152. For the majority of the time from 2003 until the alleged onset of disability, Plaintiff worked full time as a painter for an independent contractor with the United States Navy. *See id.* at 31-32, 152. In that position, he

sandblasted ships and submarines to remove paint and used a spray machine and brushes to paint them. *See id.*

Plaintiff claims that he does not experience pain but described his symptom as stiffness in both his shoulders. *See id.* at 167. He stated that this stiffness began to affect his activities on October 27, 2011. *See id.* at 167. Prior to the alleged onset of disability, Plaintiff had previously been injured and undergone shoulder surgery on his right shoulder. *See id.* at 38. He returned to work for approximately five months, but he experienced increased stiffness in both shoulders until he was unable to reach overhead. *See id.* at 39. Plaintiff testified that he was not able to work during the alleged period of disability because he had to go to physical therapy four days a week and his doctors told him that he was not able to work. *See id.* at 37.

On October 1, 2012, Plaintiff filed applications for a closed period of disability from October 27, 2011 through April 9, 2013 and DIB. *See id.* at 28, 49, 54, 128-29. In his application, Plaintiff claims that he was unable to work due to injuries to both his shoulders and the surgical repair to both his shoulders. *See id.* at 151. This application was initially denied on December 26, 2012. *See id.* at 54, 61, 63. Plaintiff then requested a hearing by an administrative law judge. *See id.* at 7. A hearing was conducted on December 5, 2013 before Administrative Law Judge Marie Greener (the "ALJ"). *See id.* at 26-49. The ALJ issued an unfavorable decision to Plaintiff dated March 17, 2014. *See id.* at 14-25. The ALJ made the following determinations: (1) Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2016; (2) Plaintiff has not engaged in substantial gainful activity since October 27, 2011, the alleged onset of disability; (3) Plaintiff's severe impairments include bilateral shoulder tendinitis and arthritis; (4) Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a Listed Impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the

3

"Listed Impairment(s)"); (5) Plaintiff has the residual functional capacity ("RFC") to lift and/or carry ten pounds occasionally and less than ten pounds frequently but should not reach overhead or perform overhead activities with his upper extremities, and he is able to sit for six hours or stand/walk for six hours in an eight-hour work day; (6) Plaintiff is not capable of performing any past relevant work; and (7) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from October 27, 2011 through the date of the ALJ's decision. *See id.* at 20.

Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council, *see id.* at 7-8, and, in a notice dated July 23, 2015, the request was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 1-5. Plaintiff then commenced this action for judicial review of the denial of his claims by the filing of a complaint on August 5, 2015. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 11, 12. The Court orders that the Commissioner's decision is reversed and remanded.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 (2d Cir. 2012); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The Court must examine the administrative transcript as a whole to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *See Brault*, 683 F.3d at 447; *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an

4

ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principals may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted). If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in [its] duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). This very deferential standard of review means that "once an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

**B.     Analysis**

Plaintiff contends that the ALJ's determination denying his disability applications should be remanded back to the Commissioner for the following reasons: (1) the disability determination was not supported by substantial evidence because the treating physician rule was not properly applied and (2) the determination that there are jobs in significant numbers in the national economy that Plaintiff can perform was not supported by substantial evidence. *See* Dkt. No. 11 at 11-16.

*1. Five-step analysis*

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).

*2. Treating Physician Rule*

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the treating physician rule was not properly applied, and, as a result, controlling weight was not assigned to Edward Choung, D.O.'s opinion. *See* Dkt. No. 11 at 11-15. Specifically, Plaintiff argues that Dr. Choung's opinion should have been accorded controlling weight because there is no substantial evidence to the contrary. Dtk. No. 11 at 20. Dr. Choung's treatment notes indicate that Plaintiff was temporarily disabled due to his post-operative status, pursuant to workers' compensation standards from April 2012 through April 2013. *See* T. at 257-63, 264-70, 287, 300-02.

A treating physician's medical opinions about the severity of a plaintiff's impairments and symptoms can be entitled to "controlling weight" when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 404.1527(a)(2); *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) ("Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, . . . an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence."); *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007) (noting that inconsistent evidence can be in the form of opinions of other medical experts).

If an ALJ refuses to assign a plaintiff's treating physician's opinion controlling weight, he or she must state a good reason for that determination. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.

7

1999) (quoting *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The regulations list factors the ALJ should consider when evaluating the appropriate weight to assign to medical opinions, including a treating source's opinion that is not assigned controlling weight. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c). The factors include (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). A treating physician's opinion can be contradicted by other substantial evidence, such as opinions of other medical experts. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007).

To begin with, Dr. Choung offered conclusions in his treatment records that Plaintiff was temporarily disabled during his postoperative period under the workers' compensation standard. *See* T. at 257-63, 264-70, 287, 300-05. Dr. Choung did not offer any medical opinions regarding the nature and severity of Plaintiff's impairments. Also, Dr. Choung did not offer any medical opinions about Plaintiff's physical or mental restrictions until April 9, 2013 – the end date of Plaintiff's alleged disability – when he stated that Plaintiff could not complete any overhead activities or lift over ten pounds. *See id.* at 305. Under the Social Security Regulations, "[m]edical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including [a plaintiff's] symptoms, diagnosis and

8

prognosis, what [a plaintiff] can still do despite impairments(s), and [a plaintiff's] physical or mental restrictions. *See* 20 C.F.R. § 1527(a)(2). Accordingly, Dr. Choung's conclusions are not medical opinions under the definition provided in the Regulations. Moreover, a medical source's statement that a plaintiff is disabled is not given any special significance because this is a determination that is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(3); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Also, as noted, Dr. Choung's statements about Plaintiff's disability was in reference to the workers compensation standards of disability. *See* T. at 257-63, 264-70, 287, 300-05. "[T]he standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the [Commissioner]." *See Rosado v. Shalala*, 868 F. Supp. 471 (E.D.N.Y. 1994) (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)). For these reasons, collectively and independently, this Court finds that Dr. Choung's statements that Plaintiff was disabled postoperatively are not entitled to any special consideration under the treating physician rule.

Plaintiff makes a general argument that the RFC was not supported by substantial evidence. The Court finds that there is substantial medical evidence to support the ALJ's determination that Plaintiff was limited to sedentary work, as that term is defined under 20 C.F.R. § 404.1567(a), and that Plaintiff was not able to lift more than ten pounds, with the additional limitation that Plaintiff is unable to reach overhead or perform overhead activities. *See* T. at 15. Plaintiff explained that he did not experience "pain" during the period of disability but, instead, he describes his symptoms as stiffness in his shoulders. *See id.* at 39, 167. Plaintiff states that the

stiffness in his shoulders increased until he was not able to reach overhead. *See id.* at 39. During this period of alleged disability, Plaintiff experienced a little pain when he lifted objects, but he was not limited in standing, walking, sitting, climbing stairs, kneeling, squatting, using his hands, seeing, hearing, or talking. *See id.* at 165. Also, Plaintiff continued to provide care to his infant daughter during this period of time. *See id.* at 169. He was able to prepare his own meals, launder his clothes, clean his residence, shop for his needs, and drive a car. *See id.* at 161-62.

Dr. Choung's treatment records document that on January 9, 2012, Plaintiff had "nearly full range of motion about his bilateral shoulders" with full strength in his rotator cuff. *See id.* at 248. Dr. Choung records described that Plaintiff had "some anterior shoulder pain" prior to surgery, *see id.* at 254, and "some discomfort" after his first surgery. *See id.* at 259. Dr. Choung notes "mild impingement signs and no real tenderness to palpation." *See id.* On July 16, 2012, Plaintiff had no complaints of pain, and, on September 5, 2012, Dr. Choung reported that Plaintiff had "no real impingement signs and no tenderness" in his right shoulder. *See id.* at 261. Plaintiff's left shoulder is reported as having "some tenderness to palpation" on September 5, 2012, but his left rotator cuff strength was within normal limits and his range of motion was "essentially full." *See id.* at 262. After surgery on his left shoulder, the medical records indicate that Plaintiff continued to have essentially full range of motion and full motor strength without any significant tenderness to palpation and mild impingement signs. *See id.* at 287, 300. On February 26, 2013, Plaintiff reported left shoulder stiffness and "some soreness" about his shoulders. *See id.* at 301.

The Court finds that based upon Plaintiff's testimony about his activities of daily living and his symptoms, Plaintiff's reported symptoms and impairments, and the medical evidence, there is substantial evidence to support the ALJ's determination of Plaintiff's RFC.

### *3. Vocational Expert*

Although Plaintiff's contention is not clear, he ostensibly makes a argument that the ALJ's determination of not disabled is unsupported by substantial evidence because a vocational expert was needed. *See* Dkt. No. 11 at 14-16. Plaintiff seems to argue that the ALJ needed a vocational expert at step five to determine whether there were jobs that exist in significant numbers in the national economy that he could perform. *See id.* at 15. The ALJ relied upon the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008), (the "Guidelines"), because Plaintiff could perform all or substantially all of the exertional demands at a given level of exertion. *See* T. at 20. Specifically, the ALJ found that Plaintiff could perform all or substantially all of the exertional demands of sedentary work, as defined in 20 C.F.R. § 404.1567(a). Under Rule 201.28 of the Guidelines, Plaintiff, as a younger individual with a high school degree, is directed as not disabled.

However, Plaintiff has nonexertional impairments that must be considered. The ALJ acknowledged that Plaintiff's job base could be eroded by his inability to reach overhead or perform overhead activities, which is a nonexertional impairment, but the ALJ concluded that Plaintiff's impairment is not a significant limitation and does not limit the number of sedentary jobs he can perform. *See* T. at 20; *see also* 20 C.F.R. § 404.1569(c)(vi). The vocational guidelines cannot be relied on if "a non-exertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert." *Sesa v. Colvin*, 629 Fed. Appx. 30, 32 (2d Cir. 2015) (internal quotations marks and citations omitted).

Significant limitations of reaching "may eliminate a large number of occupations a person could otherwise do." SSR 85-15, 1985 WL 56857, *7 (1985) ("Titles II and XVI: Capability To

11

Do Other Work – Themedical-Vocational Rules As A Framework For Evaluating Solely Nonexertional Impairments"). "Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations." *Id.* Where, as here, a plaintiff's impairment limits him from never reaching overhead, the Court finds that this is a significant nonexertional limitation that requires the use of a vocational expert at step five in order for the Commissioner to meet her burden of proof. *See, e.g.*, *Montoya v. Colvin*, ___ Fed. Appx. ___, 2016 WL 1622240, *2 (9th Cir. 2016) (stating that a limitation of occasional reaching overhead was not negligible, precluding reliance on the vocational guidelines).

Accordingly, the Court remands this case for a step-five determination on whether there are a significant number of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience. In addition, the ALJ should also take into consideration whether the frequency of Plaintiff's physical therapy appointments during the period of alleged disability would have precluded employment. *See, e.g.*, *Samuels v. Colvin*, Civil No. 3:11–CV–1046, 2013 WL 4776519, *6 n.5 (D. Conn. Sept. 6, 2013).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: September 28, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge